**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-1762 (ABJ) |
| OFFICE OF SCIENCE AND TECHNOLOGY POLICY, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Public Employees for Environmental Responsibility ("PEER") brings this lawsuit against Office of Science and Technology Policy ("OSTP"), alleging that OSTP violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2011), by failing to respond to PEER's August 11, 2010 FOIA request within the statutory period. Ex. 2 to Pl.'s Opp. & Cross-Mot. for Summ. J. ("Pl.'s Opp.") ¶ 3; Def.'s Mot. for Summ. J. ¶ 3. OSTP has produced 150 pages of responsive material, some of which was redacted in part or in full. OSTP argued that the 150 pages represented all of the responsive documents that PEER is entitled to under FOIA and that any documents not produced were exempt under 5 U.S.C. § 552(b)(5) or section 552(b)(6) ("Exemption 5" and "Exemption 6"). PEER countered, arguing that OSTP's withholdings and redactions under the Exemption 5 were excessive, but conceded that the withholdings and redactions under Exemption 6 were appropriate. Both parties have filed cross-motions for summary judgment [Dkt. #7 and #8]. For the following reasons, the Court finds summary judgment is inappropriate at this stage for either party because OSTP's *Vaughn* index

is legally insufficient for the Court to determine whether the redactions and withholdings were proper under Exemption 5.

**BACKGROUND**

On March 9, 2009, President Barack Obama issued a memorandum ("the memorandum") assigning "to the Director of the Office of Science and Technology Policy (Director) the responsibility for ensuring the highest level of integrity in all aspects of the executive branch's involvement with scientific and technological processes." Ex. 1 to Def.'s Mot. for Summ. J. Specifically, the President instructed that "the Director shall confer, as appropriate, with the heads of executive departments and agencies, . . . [and, w]ithin 120 days from the date of this memorandum, . . . develop recommendations for Presidential action designed to guarantee scientific integrity throughout the executive branch." *Id.*

Pursuant to the memorandum, Director of OSTP, John P. Holdren ("the Director"), "asked federal agencies to identify employees to serve on a working group, whose purpose 'was to gather input and draft guidance and develop draft recommendations on scientific integrity for [the Director's] consideration." Def.'s Mot. for Summ. J. at 2, quoting Leonard Decl. ¶ 5. He also "solicited input from the public through a notice in the Federal Register," and "conferred with [the Office of Management and Budget] and other federal offices and agencies." *Id.* at 3, citing Leonard Decl. ¶¶ 6–7.

The entire process took much longer than expected and lasted approximately two years. Def.'s Mot. for Summ. J. at 3. In June 2010, the Director explained the delay to Congress:

> [T]here were many, many drafts of those guidelines. And what took so long was the complexity of the task of developing guidelines that were both specific enough to add significant value . . . [and,] at the same time, would be general enough to be applicable across all the departments and agencies . . . that deal with science and technology matters. That proved to be a much more demanding task

> than any of us though at the outset and involved a great deal of debate with virtually every department, agency, and office with a stake in this matter.

*Id.*, quoting Leonard Decl. ¶ 8. Then, on December 17, 2010, the Director issued "a Memorandum for the Heads of Executive Departments and Agencies on Scientific Integrity," which constituted the Director's "final determination of how to comply with the President's directive to 'develop recommendations for Presidential action designed to guarantee scientific integrity throughout the executive branch.'" *Id.* at 3–4, quoting Leonard Decl. ¶¶ 9–10. The Director's memorandum reflected the input he received from "the working groups, agency comments, public comments, OSTP staff expertise, comments from other federal executive branch offices and personnel, as well as his own judgment and experience." Leonard Decl. ¶ 10. It did not, however, officially adopt any of the draft recommendations or comments by any of the groups. *Id.* ¶¶ 9–11.

On August 11, 2010 – prior to the release of the Director's memorandum – PEER requested several documents from OSTP, pursuant to FOIA. Specifically, PEER requested:

> (1) [A]ll communications received by OSTP from executive departments and agencies, including the Office of Management and Budget and offices and agencies within the Executive Office of the President concerning the content of these proposed policies, (2) all draft recommendations developed by the interagency panel created by OSTP with representatives from all of the major science offices and agencies, and (3) all decision memoranda, e-mails or other communications discussing the reasons for delay in publication of policies for presidential action as laid out in the March 9, 2009 Executive Memorandum.

Pl.'s Opp. at 1–2.

Though OSTP "immediately commenced a search" for the requested documents, it did not respond to PEER until September 20, 2010, when OSTP's general counsel sent a letter to PEER explaining that, "due to the extensive nature of the request, OSTP was unable to complete its review within the [statutory] response period," Leonard Decl. ¶¶ 13, 15; *accord* Pl.'s Opp. at

2, and "offered Plaintiff the option of narrowing its request to expedite a response," Def. Mot. for Summ. J. at 4–5. On October 13, 2010, during a telephone conference, OSTP's general counsel informed PEER that the agency was unable to provide "an expected delivery date for any of the requested documents." Pl.'s Opp. at 2.

PEER filed this lawsuit on October 19, 2010. *Id.*; Def.'s Mot. for Summ. J. at 5. On December 9, 2010, the parties agreed to a production schedule in which OSTP would produce all non-exempt responsive documents to PEER by February 2, 2011. Pl.'s Opp. at 2–3; Def.'s Mot. for Summ. J. at 5. Approximately 150 pages of documents were produced according to the production schedule. Pl.'s Opp. at 3.

OSTP states that its production complied with FOIA and that any withholdings are justified under Exemption 5 and Exemption 6. Def.'s Mot. for Summ. J. at 5. PEER, however, argues that the OSTP did not comply with FOIA because the produced documents contained "excessive redactions." Pl.'s Opp. at 3 ("Of the approximately 150 pages of records OSTP produced, 114 pages were either redacted in full or were so heavily redacted that only a few words or phrases were visible.").

Subsequently, OSTP moved for summary judgment [Dkt. #7] and PEER filed a cross-motion for summary judgment [Dkt. #8]. Both parties agree to the facts as stated above, and only disagree as to the legal conclusions about whether the redactions and withholdings under Exemption 5 were lawful. *See* Ex. 3 to Pl.'s Opp. ("Pl.'s Statement of Facts in Dispute"); Def.'s Mot. for Summ. J. at 1–5.

**STANDARD OF REVIEW**

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted). To prevail in a FOIA

action where the plaintiff challenges the redactions and withholdings pursuant to one of the exemptions, the agency bears the burden of proving that the asserted exemption justifies the redactions and withholdings. 5 U.S.C. § 552(a)(4)(B); *Dickstein Shapiro LLP v. U.S. Dep't of Def.*, 730 F. Supp. 2d 6, 8–9 (D.D.C. 2010). To satisfy that burden, the agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). The burden "cannot be satisfied by the sweeping and conclusory citation of an exemption plus submission of disputed material for in camera inspection." *Id.* Instead, to satisfy this burden and "enable the Court to determine whether documents were properly withheld," the agency must submit a "Vaughn index and/or accompanying affidavits or declarations" that specifically explains why certain documents were redacted or withheld. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 1445–46 (D.C. Cir. 2006); *Schoenman v. Fed. Bureau of Investigation*, 604 F. Supp. 2d 174, 196 (D.D.C. 2011).

To survive a motion for summary judgment, a plaintiff must set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980). Plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. U.S. Dep't of Justice*, 742 F. Supp. 2d 126, 130 (D.D.C. 2010) (citation and internal quotation marks omitted).

In any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). However, where a plaintiff has not provided evidence that an agency has acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

The district court must "determine the matter *de novo*, and . . . the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## ANALYSIS

OSTP concedes that it redacted or withheld documents that were otherwise responsive to PEER's FOIA request. *See* Def.'s Mot. for Summ. J. at 5. However, OSTP maintains that the redactions and withholdings were justified under FOIA Exemption 5 and Exemption 6 because the records either were part of the deliberative process or contained personal information about the documents' authors. *Id.* at 5, 13–18, 19–21. OSTP also argued that its redactions and withholdings complied with FOIA's segregability requirements. *Id.* at 19; *see also* 5 U.S.C. § 552(b) ("[A]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt . . . ."); *Mead Data Cent., Inc.*, 566 F.2d at 260 ("[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").

PEER concedes that OSTP's redactions and withholdings pursuant to Exemption 6 are lawful.[1] Pl.'s Opp. at 6. However, it argues that OSTP failed to meet its burden to establish that the redactions and withholdings pursuant to Exemption 5 were lawful, and that OSTP "improperly withheld materials that are purely investigative and factual in nature as deliberative." *Id.* at 4. PEER also contends that OSTP's redactions and withholdings were excessive because OSTP "failed to adequately disclose segregable material in the vast majority of documents that it turned over." *Id.* at 6. The Court finds, at this time, that it does not have enough information to grant summary judgment in favor of either party.

Exemption 5 provides agencies with the authority to deny FOIA requests where the requested documents include "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). In determining whether a document was properly withheld under subsection (b)(5), a court must determine that the document satisfies "two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

With regard to the second condition, the Supreme Court has determined that:

> [T]hose privileges include the privilege for attorney work-product and what is sometimes called the "deliberative process" privilege. Work product protects "mental processes of the attorney," while deliberative process covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.

---

1  Because plaintiff is not challenging OSTP's redactions and withholdings made pursuant to Exemption 6, the Court will not address that issue.

*Id.* (internal citations omitted); *accord Schlefer v. United States*, 702 F.2d 233, 237 (D.C. Cir. 1983); *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 134 (D.D.C. 2011). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and the goal behind its exemption "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath Water*, 532 U.S. at 8–9 (internal citations omitted). The deliberative process privilege, however, only "protects agency documents that are *both* predecisional and deliberative." *Judicial Watch, Inc.*, 449 F.3d at 151 (emphasis added).

The agency bears the burden of proving that the redactions and withholdings were proper under the claimed exemption. In Exemption 5 cases, this typically requires the agency to prove that the withheld information is both predecisional and deliberative. Here, however, PEER does not challenge that the redacted and withheld documents are predecisional, and the Court finds nothing in the record that suggests otherwise.[2] Instead, PEER argues that OSTP failed to meet

---

2     Though the law is clear that Exemption 5 requires a showing that withheld information is both predecisional and deliberative, courts often combine the two requirements. *See Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1194–95 (D.C. Cir. 1991) (discussing courts' confusion in assessing whether withheld information satisfies the requirements of Exemption 5). This Circuit, however, has made clear that the two requirements are separate. *Id.* at 1195. The common test for determining whether a document is predecisional is "whether [the document] was generated before the adoption of an agency policy . . . [and] would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A court also should ask "whether the document is recommendatory in nature or is a draft of what will become a final document." *Id.* However, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id.* Here, OSTP states that all the redacted and withheld documents were predecisional because they are all advisory or recommendatory statements made to the Director, who retained sole authority to make the final decision regarding OSTP's policy, and the Director did not officially adopt any of the recommendations. Leonard Decl. ¶¶ 9–11. PEER does not challenge

its burden to establish that the redacted statements and withheld documents were deliberative in nature. Consequently, the Court will only address the latter portion of the test.

This Circuit considers a document deliberative if "it reflects the give-and-take of the consultative process." *Judicial Watch*, 449 F.3d at 151, quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Whether a document is deliberative and part of the consultative process "can often be resolved by the simple test that factual material must be disclosed but advice and recommendations may be withheld." *Wolfe v. U.S. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988). A court, however, must still consider whether factual material should be disclosed because, "[i]n some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the [deliberative process] privilege." *Id.* A court, in determining whether withheld information was deliberative, relies on the agency's *Vaughn* index and/or its declarations. It is under this framework that the Court now addresses whether OSTP met its burden of establishing that the redacted information and withheld documents are deliberative.[3]

Before reaching the merits of this case, however, the Court finds it helpful to review two previous cases decided by two other courts in this district: in the first case, the Court found the *Vaughn* index descriptions insufficient to warrant summary judgment, and, in the second case, the Court found the *Vaughn* index descriptions sufficient to warrant summary judgment. These cases are particularly helpful in explaining what information the agency must provide to the Court in order for the case to be ripe for summary judgment.

---

the predecisional nature of the withheld information and, as mentioned above, the Court finds that OSTP has met its burden of proving that the documents were predecisional.

3     OSTP argues that PEER's challenges to the redactions and withholdings must fail because they are speculative and do not prove that OSTP acted in bad faith. Def.'s Opp. at 3–4.

In the first case, *Defenders of Wildlife v. U.S. Border Patrol*, both parties moved for summary judgment in an action challenging the U.S. Border Patrol's response to the plaintiff's FOIA request. 623 F. Supp. 2d at 85–86. In addition to its motion for summary judgment, the defendant provided the plaintiff and the Court with a *Vaughn* index. *Id.* at 86. In reviewing the *Vaughn* index, the Court noted that it "systematically fail[ed] to identify relevant information such as the originating component agency, the author, and frequently the recipient(s) of the document." *Id.* at 88. The Court also noted that the index descriptions were "unduly vague and general," with the typical entry stating: "Three pages Withheld in Full. Exemption (b)(5) was cited to protect the deliberative process privilege as it is applied to pre-decisional material or discussions, the general purposes of which [are] to encourage open frank discussions among personnel." *Id.* at 89. The Court then concluded that the *Vaughn* index was legally insufficient to warrant summary judgment because there was "no explanation of how any of the documents [were] pre-decisional or deliberative or what deliberative process [was] involved. It [was] not sufficient to state that all withholdings relate to 'a decision . . . on how to best implement the Arizona Border Control Initiative.'" *Id.* at 89, 91. Consequently, the Court determined that it could not grant summary judgment in favor of either party until the defendant amended or supplemented the Vaughn index. *Id.* at 93.

Conversely, in *People for the Am. Way Found. v. Nat'l Park Servs.*, another court in this district found the defendant's *Vaughn* index sufficient to grant summary judgment where the descriptions showed that the excluded documents were part of the deliberative process. 503 F. Supp. 2d 284, 301 (D.D.C. 2007). Explaining its decision, the Court offered an example of one of the descriptions that provided enough detail to allow the Court to determine whether a FOIA exemption applied: "[Document 12 Description:] This email was redacted in part and describes

initial thoughts and reaction to the Lincoln Memorial videotape description from the CNS story in this same email. The redacted portions speculate and describe perceived reactions to the story." *Id.* at 295. The specific detail about why the redacted email was deliberative provided the Court with enough information to find that summary judgment in favor of the defendant was appropriate.

Here, OSTP's *Vaughn* index is more similar to the legally insufficient index in *Defenders of Wildlife* than to the legally sufficient index in *National Park Services*. Though OSTP provided information that was otherwise missing in *Defenders of Wildlife* – the originating component agency, the author, and the recipient(s) of the documents – every declaration for *why* the document was redacted or withheld contains the same boilerplate language: "This is a preliminary, non-final draft of the memorandum that reflects recommendations from governmental employees," or "[t]he redacted portions of this e-mail are deliberative because they reflect deliberations among government employees regarding the content of a preliminary, non-final draft of the memorandum." Ex. 2C to Def. Mot. for Summ. J. In other words, it appears that OSTP did nothing more than copy and paste circular justifications throughout its seventy-nine page *Vaughn* index instead of providing the Court with the necessary level of information to determine whether the documents were properly withheld under Exemption 5. Likewise, the Leonard declaration – the only declaration provided by OSTP – contains the same conclusory statements justifying the redactions and withholdings. Leonard Decl. ¶¶ 19–23. Though an agency is not required to disclose so much information that it would thwart the purpose of the exemption invoked, *Hall v. U.S. Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008), summary judgment is inappropriate where the agency provides only conclusory statements and has not satisfied its burden of justifying its withholdings, *Defenders of Wildlife*, 623 F. Supp. 2d

at 88.  Without additional information regarding OSTP's decision to redact and withhold information, the Court does not have sufficient information to grant summary judgment in favor of either party at this time.[4]

## CONCLUSION

For the reasons stated above, the Court denies both OSTP's motion for summary judgment, and PEER's cross-motion for summary judgment because OSTP's *Vaughn* index does not provide the necessary information the Court needs to determine whether the documents were lawfully redacted or withheld pursuant to Exemption 5.  OSTP should amend or supplement its *Vaughn* index and/or declarations to provide more detail as to why each redacted or withheld document falls within the deliberative process privilege.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 8, 2011

---

4    Because the Court has found OSTP's *Vaughn* index legally insufficient, the Court cannot determine, at this time, whether OSTP also failed to segregate non-exempt material from exempt material in its withholdings.  Therefore, the Court reserves judgment on the issue of segregability until OSTP provides the Court with the needed information.